## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## SOUTHWESTERN ELECTRIC COOPERATIVE, INC., Respondent.

### No. 85–1751.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1986.

Decided June 18, 1986.

Lawrence P. Kaplan, Suelthaus, Kaplan, Cunningham, Yates, Fitzsimmons & Wright, St. Louis, Mo., for respondent.

Christopher W. Young, N.L.R.B. (Elliott Moore, N.L.R.B.), Washington, D.C., for petitioner.

Before POSNER, FLAUM, and EAST-ERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order finding that the Southwestern Electric Cooperative, Inc. violated sections 8(a)(1) and 8(a)(5)[1] of the National Labor Relations Act by refusing to process employee grievances unless and until Local Union 702 of the International Brotherhood of Electrical Workers put those grievances in writing. We find that the NLRB's order was supported by substantial evidence. The contract in force allowed the Union, and it was the Union's past practice, to orally detail the grievances to be arbitrated. Therefore we enforce the order.

1. Sections 8(a)(1) and (5) of the Act, 29 U.S.C. §§ 158(a)(1) and (5), provide as follows:
   Sec. 8. (a) It shall be unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7;
   \*   \*   \*   \*   \*   \*
   (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a).

2. "Sec. 3.02: The Cooperative agrees to meet and to treat with the duly accredited officers and committees of the Union in the following manner on differences that may arise between the Cooperative and the Union."

3. "Sec. 3.03: In case of any disagreement arising between the Cooperative and any employee and/or employees under this Agreement, such disagreement shall first be presented by the Steward to the Foreman or Operations Supervisor of the Cooperative in charge of the work and the Business Representative of the Local Union."

4. "Sec. 3.04: In case of a failure to agree in this manner, the Business Manager of the Local

I.

The respondent Southwestern is a public rural electric cooperative located in Greenville, Illinois. Since 1952 Southwestern has recognized Local Union 702 as the exclusive bargaining representative of production, maintenance, and construction employees at three facilities. Southwestern and the Union have executed successive bargaining agreements since that time and executed the 1982–84 collective bargaining agreement that is at issue here. In that collective bargaining agreement, Section 3.02 imposes a duty on Southwestern to meet with the Union about "differences that may arise between" them.[2] Section 3.03 provides that this duty is triggered when the disagreement is "presented" to the company by the Union.[3] "In case of a failure to agree in this manner," Section 3.04 provides that the Union has the right to seek a higher level resolution of the grievance by the Labor Relations Committee of the Cooperative.[4] If this effort fails, either party to the agreement has the right to invoke binding arbitration, provided that two conditions as specified in Section 3.05 are met.[5] The two conditions are that the

Union, who may be accompanied by a committee of the employees of the Cooperative, shall endeavor to adjust disagreements with the Labor Relations Committee of the Cooperative. In case of failure to then reach an agreement, the matter shall be submitted to arbitration in the manner provided in Section 3.05."

5. Sec. 3.05: The party desiring arbitration shall give notice in writing by registered mail to the other party and shall on or before the fifth (5th) working day following the date of the mailing of such notice, advise such other party in writing by registered mail of the names of two (2) representatives to serve on the Board of Arbitration hereinafter referred to. Such other party shall, on or before the fifth (5th) working day following the receipt of such notice, advise the party seeking arbitration, in writing by registered mail, of the names of two (2) Representatives to serve on said Board of Arbitration. The four (4) Representatives so designated shall constitute a Board of Arbitration and shall meet promptly and endeavor to settle the grievance or grievances submitted, and in case of failure to reach a settlement within five (5) days (Sundays and Holidays excluded) from the date of their initial meeting, the four (4) members so designated shall select a fifth member of said

party desiring arbitration (1) gives "notice in writing" to the other party, and (2) notifies the other party in writing of the names of two representatives to serve as arbitrators.

On November 19, 1982 Southwestern posted a notice of layoff for fifteen employees represented by the Union. On November 21 and 29, 1982 representatives of the Union and Southwestern met and discussed a variety of issues relating to the layoffs. At the last meeting both sides agreed to proceed as quickly as possible to formal arbitration "to get it over with." However, the precise matters to be arbitrated remained indefinite. After the meeting Southwestern obtained a panel of arbitrators from the Federal Mediation and Conciliation Service and forwarded a list of their names to counsel for the Union. The Union's attorney telephoned Southwestern's attorney to discuss selecting an arbitrator and at that time the conflict that is at issue in this case arose.

Counsel for Southwestern requested a written list of the specific items to be arbitrated. The Union's attorney orally detailed the issues in dispute but refused to submit a written list. Counsel for both sides exchanged a series of letters regarding their respective positions on the Union's obligation to supply a written statement of the grievance prior to the selection of an arbitrator. The Union's attorney met with Union officials several times and orally reported in detail to Southwestern's attorney what matters were to be arbitrated. The Union then offered to exchange written statements of the issues prior to the actual arbitration but Southwestern again refused to select an arbitrator unless the Union put the issues that the Union's counsel had orally explained in writing.

Three days after the two attorney's last telephone call the Union filed the unfair labor practice charge at issue in this case. The Administrative Law Judge, and the Board, found that Southwestern had violated sections 8(a)(1) and 8(a)(5) of the Act, 29 U.S.C. §§ 158(a)(1) and (5), by unilaterally modifying the grievance-arbitration terms contained in the collective bargaining agreement. The NLRB's order requires Southwestern to cease the unfair labor practice by withdrawing its requirement that grievances be put in writing and by selecting arbitrators for the resolution of the underlying dispute.

## II.

■ We find that the Board's decision is supported by substantial evidence on the record as a whole and represents a reasonable construction of the Act. Section 8(a)(5) of the Act, 29 U.S.C. § 158(a)(5), makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." Section 8(d), 29 U.S.C. § 158(d), defines the collective bargaining obligation as prohibiting a party to a collective bargaining agreement from terminating or modifying an agreement prior to its expiration date. Accordingly, an employer acts in derogation of section 8(d), and thereby violates sections 8(a)(5) and (1) of the Act, by making mid-term changes in any provision of a collective bargaining agreement relating to a mandatory subject of bargaining, such as wages, hours, or other terms and conditions of employment without first obtaining the union's consent. *First National Maintenance Corp. v. N.L.R.B.*, 452 U.S. 666, 675, 101 S.Ct. 2573, 2579, 69 L.Ed.2d 318 (1981); *Allied Chemical Workers, Local 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 183–88, 92 S.Ct. 383, 399–402, 30 L.Ed.2d 341 (1971); *N.L.R.B. v. Manley*

Board. In the event the four (4) members of the Arbitration Board cannot agree on a fifth arbitrator within five (5) days of the date on which they decide the dispute can be settled in no other manner, then either or both parties may call upon the director of Federal Mediation and Conciliation Service at Washington, D.C., to appoint the fifth member who shall act as an

impartial member and as the Chairman of said Board. The Arbitration Board so constituted shall hear and consider the evidence submitted to it and render a decision on the grievance or grievances presented without avoidable delay. It is agreed that a majority decision rendered by said Board shall be final and binding on both parties.

*Truck Line, Inc.*, 779 F.2d 1327, 1329 (7th Cir.1985); *Chicago Magnesium Castings Co. v. N.L.R.B.*, 612 F.2d 1028, 1034 (7th Cir.1980).

 There is substantial evidence to support the Board's findings that there is no express contractual requirement that grievances be put in writing, and that sections 3.01 through 3.05 (as described in Part I of this opinion) appear on their face to contemplate that prior to arbitration the parties' disagreements will be resolved orally and informally. For thirty years the Union had always presented grievances orally without protest from Southwestern. Substantial evidence, in the form of the language of the contract and the long and consistent history of how both sides interpreted that language, supports the Board's finding that the right to file oral grievances was "contained in" the collective bargaining agreement.

The Board's finding is also supported by common practice and common grievance-arbitration procedures. These procedures are by their very nature adjuncts to the parties' collective bargaining process, and therefore they must operate flexibly if they are to foster prompt dispute resolution. *See* Newman and Wilson, *Arbitration—As the Parties See It, A Union Point of View*, contained in Arbitration Promise and Performance (Proc. of the 36th Ann. Meeting Nat. Acad. of Arbitrators) 39 (BNA 1983). To maintain this needed flexibility, it is therefore clear that "[p]recise pleadings in moving from step to step ordinarily should not be required." F. Elkouri & E.A. Elkouri, How Arbitration Works, 120 n. 60 (1973).

Southwestern contends that it has a statutory right under section 8(d) of the Act to information relevant to the processing of any grievance and that by requiring that all grievances be presented in writing it was only exercising that right. But the right to information does not include the right to dictate the form that information comes in. "It is well settled that an employer is not obligated to furnish relevant information in the exact form requested by the employees' representative. Rather '[i]t is sufficient if the information is made available in a manner not so burdensome or time-consuming as to impede the process of bargaining.'" *Roadway Express, Inc.*, 275 NLRB No. 156, slip op. 2, 120 LRRM 1024, 1024 (July 17, 1985), quoting *Cincinnati Steel Castings Co.*, 86 NLRB 592, 593 (1949). Accord *United Aircraft Corp.*, 192 NLRB 382, 427 (1971), enfd. in rel. part, 534 F.2d 422, 466 (2d Cir.1975); *Abercrombie & Fitch Co.*, 206 NLRB 464, 466 (1973).

### III.

We find no merit in any of Southwestern's other claims and therefore order the Board's determination enforced.