Charlene PREWITT, Plaintiff,

v.

FACTORY MOTOR PARTS, INC., Defendant.

No. 89–0507–CV–W–9.

United States District Court, W.D. Missouri, W.D.

Sept. 19, 1990.

Walter R. Simpson, Sanders & Simpson, P.C., Kansas City, Mo., for plaintiff.

Lawrence W. Bigus, Gregory I. Azorsky, DeWitt, Zeldin & Bigus, Mark G. Flaherty, Husch, Eppenberger, Donohue, Cornfeld & Jenkins, Kansas City, Mo., for defendant.

ORDER DENYING IN PART AND GRANTING IN PART DEFEN-DANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND III AND DISMISSING COUNT II

BARTLETT, District Judge.

On May 26, 1989, Charlene Prewitt filed a three-count action against her former employer, Factory Motors Parts, Inc. (Factory Motor).

Factory Motor sells automobile parts on a wholesale basis. Plaintiff began working at Factory Motor on November 26, 1979, and was terminated by Factory Motor on March 15, 1989. During most of her employment, plaintiff worked at the "city desk" handling customer orders on the telephone. Plaintiff testified that she called the Wage and Hour Division shortly before her termination regarding Factory Motor's proposed plan to change the salaries and working hours of its employees and that she reported this contact to Factory Motor's general manager. Exhibit A, transcript of unemployment hearing at pp. 172–74.

Plaintiff's action is based on her allegation that she was fired by defendant because she contacted the Wage and Hour Division of the United States Department of Labor regarding defendant's proposed plan to change the salaries and working hours of its employees. Count I is for wrongful discharge under 29 U.S.C. § 215(a)(3) of the Fair Labor Standards Act (FLSA); Count II is for wrongful discharge in violation of the public policy of the State of Missouri; and Count III alleges a violation of the Missouri Service Letter Statute, Mo.Rev.Stat. § 290.140.

On June 1, 1990, defendant filed a Motion for Summary Judgment arguing that plaintiff has no cause of action under 29 U.S.C. § 215(a)(3) and that even if she did, the undisputed facts show that she was terminated as a result of her poor job per-formance, not as a result of her telephone call to the Wage and Hour Division. Defendant also argues that plaintiff's state law claim for wrongful discharge is preempted by the FLSA and that she has alleged insufficient facts to show that her termination violated the public policy of the State of Missouri. Defendant argues further that the undisputed facts show that the reasons given by defendant in its response to plaintiff's service letter request were not false and that plaintiff suffered no damages as a result of the service letter that was provided to her.

On June 22, 1990, plaintiff filed Suggestions in opposition to Defendant's Motion for Summary Judgment and on July 5, 1990, defendant replied to plaintiff's Suggestions in Opposition.

## I. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a

whole." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported *motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could

properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* 106 S.Ct. at 2512.

## II. DISCUSSION

### A. *Factory Motor's Motion for Summary Judgment on Count I Will Be Denied*

■ Section 215(a)(3) of the FLSA provides that it shall be unlawful for any person

to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

29 U.S.C. § 215(a)(3).

Defendant argues that making a phone call requesting information from the Wage and Hour Division is not conduct protected by § 215(a)(3).

Prewitt did not assert a statutory right. According to her testimony, she merely contacted the 'Labor Board' and requested, and received, information. Surely the statute was not intended to protect employees who have been repeatedly counseled about poor performance, and who know that their jobs are in jeopardy, who simply allege, without substantiation, that they have made a phone call to some governmental entity.

Defendant's June 1, 1990, Suggestions in Support of Motion for Summary Judgment at 12.

The United States Supreme Court has summarized its interpretation of Congressional intent in enacting § 215(a)(3).

For weighty practical and other reasons, Congress did not seek to secure compliance with prescribed standards through

continuing detailed federal supervision or inspection of payrolls. Rather, it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances. This ends the prohibition of § 15(a)(3) against discharges and other discriminatory practices was designed to serve. For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions. By the proscription of retaliatory acts set forth in § 15(a)(3), and its enforcement in equity by the Secretary pursuant to § 17, Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced.

*Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960) (citation omitted).

The Court has interpreted the provisions of the FLSA liberally.

[T]he Fair Labor Standards Act, [is] remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others. Those are the rights that Congress has specially legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner.

*Tennessee Coal, Iron and Railroad Co. v. Muscoda Local No. 123,* 321 U.S. 590, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944).

In *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179 (8th Cir.1975), the court interpreted § 215(a)(3) broadly to cover an employee's complaint to her employer that was unaccompanied by any contact with the Wage and Hour Division. In this case, an employee was discharged within a few hours of an emotional outburst following her refusal to return a back pay award to her employer. The court stated:

The Act prohibits discrimination against an employee who asserts or threatens to assert his or her FLSA rights.... Holman's protest of what she believed to be unlawful conduct on Maxey's part was an act protected from reprisals and rendered her firing discriminatory regardless of the existence of other grounds for her discharge.... [S]he insisted upon receiving and retaining her back wage check before signing her receipt and was promptly dismissed. Her discharge was a direct result of her insistence upon receiving retroactive benefits required under the Act.... [H]er lawful assertion of rights ... must be protected. To hold otherwise would defeat the Act's purpose in § 215(a)(3) of preventing employees' attempts to secure their rights under the Act from taking on the character of 'a calculated risk.'

*Id.* at 180–81 (citation omitted).

Other courts have interpreted § 215(a)(3) broadly and have not limited its protection to activities explicitly covered by its language. *See generally Brock v. Casey Truck Sales, Inc.,* 839 F.2d 872 (2d Cir. 1988) (§ 215(a)(3) liability found when employees were fired after refusing to repudiate, in a "loyalty oath" rights guaranteed to them under the FLSA); *Brock v. Richardson,* 812 F.2d 121, 124 (3rd Cir.1987) (liability found when employee was fired based upon employer's mistaken belief that employee had filed complaint against him with the Wage and Hour Division); *Love v. Re/Max of America, Inc.,* 738 F.2d 383, 387 (10th Cir.1984) (liability found when employee was fired after writing a memorandum to her employer requesting a raise and attaching a copy of the Equal Pay Act to the memorandum); *Daniel v. Winn–Dixie Atlanta, Inc.,* 611 F.Supp. 57 (N.D. Ga.1985) (conduct by employee in complaining to employer about possible underpayment of overtime compensation and then telephoning the Wage and Hour Division to explain her problem was conduct protected by § 215(a)(3)).

Plaintiff testified in the unemployment hearing that she telephoned the Labor Board (presumably, the Wage and Hour Division) and requested information about

whether her employer's "new plan" was lawful. Tr. 172. A prerequisite to an employee knowing whether to file a complaint is having information about whether an employer's actions may violate the FLSA. Because § 215(a)(3) has been interpreted broadly in order to achieve Congress' purpose, plaintiff's telephone call to the Wage and Hour Division is conduct protected by § 215(a)(3).

■ Defendant argues further that summary judgment should be granted on Count I because the undisputed facts show that plaintiff was terminated as a result of her job performance, not as a result of her telephone call to the Wage and Hour Division.

In ruling a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (citation omitted). Plaintiff has presented portions of the transcripts of her deposition, of her unemployment hearing and of a recorded conversation between herself and Jim Badzin, the Chief Executive Officer (CEO) of Factory Motor, that support an inference that she was terminated because she contacted the Wage and Hour Division. Plaintiff testified that she told Richard Pederson, general manager of Factory Motor, about her call to the Labor Board within a week after it took place. Unemployment hearing transcript at 172–74. During plaintiff's recorded conversation with Badzin which took place after she called the Labor Board, Badzin asked plaintiff for her resignation. He told plaintiff that he wanted to discuss "calling the Labor Board this morning."

> Anytime there's a problem and you're calling the Labor Board that's something to be concerned about, okay? And to ask you for your resignation.... You people don't have to come in. You don't have to come in but you won't have a job if you do that, either. Is that a threat or is that a threat? A threat. It's part of the employment here within this company. And when you're doing it for here

and there's a problem—and I talked to my attorney Mike last night told me to call an attorney in Ft. Worth, I got on the line, I'm right in line, I am right in line.... Sue me, baby, okay? ... Sue me.... [N]obody's going to start twisting me and pushing me up against Labor Boards or anybody else, otherwise they are going to have one huge fight on their hands because they don't know who they're dealing with.

Plaintiff's June 22, 1990, Suggestions in Opposition, Exhibit A, at 30–32, 35.

Defendant asserts that this conversation is not relevant to plaintiff's termination because Gary Sarow, office manager of Factory Motor, and Pederson were the only two persons involved in the decision to terminate plaintiff. Motion for Summary Judgment, Exhibits C and D; unemployment hearing transcript at 41, 119. In her Suggestions in Opposition, Prewitt disputes the fact that Badzin did not provide input regarding her termination but does not cite factual material to support this assertion. Defendant argues that plaintiff "has no evidence that Badzin participated in the decision regarding her termination."

It is undisputed that Badzin is the CEO of Factory Motor and that Sarow and Pederson reported to him in his capacity as CEO advising Badzin of their decision to terminate plaintiff. *Id.,* Exhibits C and D, affidavits of Sarow and Pederson. A reasonable jury might conclude that Sarow and Pederson were seeking the approval of the CEO.

Plaintiff has presented additional facts that conflict with defendant's assertion that she was discharged because of her job performance. For example, defendant asserts that plaintiff stated to a customer, "I wish the hell you people would get your shit together." Suggestions in Support at 8, undisputed fact 39. Plaintiff testified that she did not make this statement. Transcript of unemployment hearing at 163. As another example, defendant states in undisputed fact 44 that various employees told Factory Motor's General Manager and Office Manager that plaintiff had said she wanted to be fired. Defendant testi-

fied that she never told anyone that she wanted Factory Motor to fire her. Transcript of unemployment hearing at 163.

Plaintiff and defendant present conflicting evidence regarding why plaintiff was terminated. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id.* Defendant's Motion for Summary Judgment on Count I will be denied.

### B. Count II Will Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

■ In Count II of her Complaint, plaintiff asserts a state law claim for wrongful discharge. She argues that her claim comes within the public policy exception to Missouri's employment-at-will doctrine.

Defendant argues that plaintiff's state law claim for wrongful discharge is preempted by the FLSA and that plaintiff has not stated a claim within the public policy exception.

Plaintiff does not respond to defendant's preemption argument. The public policy which plaintiff relies upon to avoid application of Missouri's employment-at-will doctrine is the policy underlying the FLSA. The FLSA provides a complete range of remedies to an employee who can establish a claim under the FLSA. Under these circumstances, the complete statutory remedy replaces the common law remedy. "A statutory right of action shall not be deemed to supersede and displace remedies otherwise available at common law in the absence of language to that effect unless the statutory remedy fully comprehends and envelopes [sic] the remedies provided by common law." *Detling v. Edelbrock,* 671 S.W.2d 265, 271–72 (Mo.1984) (en banc) (citations omitted).

Other federal courts have reached a similar conclusion. In *Wanderlingh v. May Department Stores Co.,* 1984 WL 3293 (D.Colo.), the court held that plaintiff's claim for wrongful discharge contrary to the public policy embodied in the FLSA did not state a claim upon which relief could be granted.

Following the rationale in *Corbin v. Sinclair Marketing, Inc.,* 684 P.2d 265 (Colo.App.1984), when the statute from which the policy for the public policy exception is derived provides the employee a remedy for the alleged violation, the public policy exception to the employment at will rule is inapplicable.... The FLSA provides plaintiff with specific remedies under 29 U.S.C. §§ 216(b) and 217.

In *Tate v. Pepsi Cola Metropolitan Bottling Co., Inc.,* 32 Employment Practices Decisions, § 33,951, 1983 WL 549 (E.D.Wis. 1983), the court granted summary judgment on plaintiff's claim for wrongful discharge contrary to public policy based on a violation of the FLSA. "The second fatal defect in the plaintiff's claim is that the FLSA provides its own exhaustive enforcement remedy. 29 U.S.C. § 216. The Wisconsin Supreme Court has consistently held that where the legislature provides statutory remedies for the enforcement of particular rights, those remedies should be exclusive." *Id.* at 31,512 (citations omitted).

In *Lerwill v. Inflight Motion Pictures, Inc.,* 343 F.Supp. 1027, 1029 (N.D.Cal.1972), the court concluded that "the statutory remedy is the sole remedy available to the employee for enforcement of whatever rights he may have under the FLSA."

In *Wehr v. Burroughs Corp.,* 438 F.Supp. 1052, 1055 (E.D.Pa.1977), the court dismissed a claim for breach of contract in violation of public policy that was brought along with a claim under the Age Discrimination in Employment Act (ADEA). The court explained that the rationale for the public policy exception was satisfied if a remedy was available to protect the employee's interests.

It is clear then that the whole rationale undergirding the public policy exception is the vindication or the protection of certain strong policies of the community. If these policies or goals are preserved by other remedies, then the public policy is sufficiently served. Therefore, application of the public policy exception re-

quires two factors: (1) that the discharge violate some well-established public policy; and (2) that there be no remedy to protect the interests of the aggrieved employee or society.

The public policy that would be furthered by a wrongful discharge claim based on a violation of § 215(a)(3) is fully vindicated by plaintiff's claim in Count I brought pursuant to the FLSA. Count II will be dismissed for failure to state a claim upon which relief can be granted.

Furthermore, the public policy exception to Missouri's employment-at-will doctrine is narrow. *Crockett v. Mid America Health Services,* 780 S.W.2d 656, 658 (Mo.App. 1989).

> To be sustainable as an actionable claim for wrongful discharge, an employee suing under the public policy exception to the employment at will doctrine must allege and prove that conduct required of him by the employer would have amounted to a violation of a statute, constitutional provision or regulation adopted pursuant to a statute, and also that his discharge was attributable to a refusal to perform the unlawful act or his performance of a mandated lawful act contrary to the directions of his employer.

*Id.*

▮ In addition, the public policy exception in Missouri protects an employee who reports to an employer or to public authorities serious misconduct that constitutes a violation of law or of a clearly mandated public policy. *Boyle v. Vista Eye Wear, Inc.,* 700 S.W.2d 859, 878 (Mo.App.1985).

Here, plaintiff has not presented facts that would bring her within Missouri's public policy exception because she was terminated neither for failing to perform an unlawful act nor for reporting an unlawful act. Accordingly, she was subject to Missouri's employment-at-will doctrine precluding a claim for wrongful discharge.

C. *Defendant's Motion for Summary Judgment on Count III Will Be Granted to the Extent Plaintiff Seeks Actual Damages for Violation of the Missouri Service Letter Statute*

▮ In Count III, plaintiff alleges defendant violated the Missouri Service Letter Statute, Mo.Rev.Stat. § 290.140, by making false statements in its response to her service letter request. Complaint at 24. Plaintiff also alleges that "[a]s a direct result of the issuance of the untrue service letter of defendant ... plaintiff has been refused employment and has been hindered in her attempts to obtain employment." Complaint at 25. In Count III, plaintiff requests $15,000 in actual damages. Complaint at 7.

In its Motion for Summary Judgment, defendant argues that the undisputed facts show that the reasons given in the service letter by defendant were not false and that plaintiff suffered no damages as the result of the service letter provided to her. In her Suggestions in Opposition, plaintiff argues that the reasons given in the service letter provided to her by defendant were false but does not address the issue of whether she suffered damages as a result of the service letter.

The Missouri Service Letter Statute provides in relevant part:

> 1. Whenever any employee of any corporation doing business in this state and which employs seven or more employees ... shall be discharged or voluntarily quit the service of such corporation and who thereafter ... requests in writing by certified mail to the superintendent, manager or registered agent of such corporation, with specific reference to the statute, it shall be the duty of the superintendent or manager of said corporation to issue to such employee ... a letter ... setting forth the nature and character of service rendered by such employee ... and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service.

Mo.Rev.Stat. § 290.140 (1990).

In order to recover actual damages under § 290.140, a plaintiff must establish:

> (1) that on or about an approximate date the plaintiff was either refused employment or hindered in obtaining such employment;

(2) that the refusal or hinderance was caused by the absence or inadequacy of the service letter;

(3) that the position the plaintiff had difficulty obtaining was actually open; and

(4) the salary rate of that position.

*Labrier v. Anheuser Ford, Inc.*, 621 S.W.2d 51, 57 (Mo.1981) (en banc) (citations omitted).

Plaintiff testified in her deposition as follows:

Q. You asked for a service letter and you got a response back, remember?

A. Yes.

Q. Did you ever show that response to anybody?

A. My husband, my kids, my attorney.

Q. Other than those people, did you ever show the service letter response to anybody?

A. Not to my knowledge.

Q. Did anyone ever ask you when you were applying for employment to see a service letter response?

A. No.

Prewitt deposition at 160–61.

Plaintiff has presented no facts conflicting with her deposition testimony. Accordingly, no issue for trial has been presented whether a prospective employer asked to see the service letter or held the service letter against plaintiff. Accordingly, plaintiff is not entitled to seek actual damages for defendant's alleged violation of the Missouri Service Letter Statute.

However, an employee can recover nominal damages against a former employer who gives false reasons for the employee's termination in its response to a service letter request. *Crompton v. Curtis–Toledo, Inc.*, 661 S.W.2d 645, 648 (Mo.App. 1983). For the reasons given in the discussion of Count I, disputed facts exist regarding the truthfulness of the reasons stated for plaintiff's discharge in the service letter. Therefore, plaintiff is entitled to seek nominal damages under the Missouri Service Letter Statute.

### III. CONCLUSION

Accordingly, it is hereby ORDERED that:

1) defendant's Motion for Summary Judgment on Count I is denied;

2) Count II is dismissed for failure to state a claim upon which relief can be granted; and

3) defendant's Motion for Summary Judgment on Count III is granted to the extent that plaintiff is precluded from seeking actual damages under the Missouri Service Letter Statute.