# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-2820

KEVIN KASTEN,

*Plaintiff-Appellant,*

*v.*

SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07-C-0686—**Barbara B. Crabb**, *Chief Judge.*

On Petition for Rehearing En Banc

SUBMITTED JULY 13, 2009—DECIDED OCTOBER 15, 2009

Before EASTERBROOK, *Chief Judge*, and POSNER, FLAUM, KANNE, ROVNER, WOOD, EVANS, WILLIAMS, SYKES, and TINDER, *Circuit Judges*.

On consideration of the petition for rehearing with suggestion of rehearing en banc filed by the plaintiff-appellant and the answer of defendant-appellee,

Judge Bauer and Judge Flaum, the two circuit judges on the original panel,[*] voted to deny rehearing and a majority of the judges in active service voted to deny rehearing en banc.

The petition for rehearing en banc is denied.

ROVNER, *Circuit Judge,* with whom WOOD and WILLIAMS, *Circuit Judges,* join, dissenting from the denial of rehearing en banc. The court has adopted a construction of the Fair Labor Standard Act's anti-retaliation provision that is unique among the circuits. On the one hand, the court understands the statute's "filed any complaint" language to cover intra-company complaints about unfair labor practices, but on the other it concludes that oral complaints fall outside the reach of the statute. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 570 F.3d 834 (7th Cir. 2009). In deeming the statutory language to reach only written and not oral complaints, the court has taken a position contrary to the longstanding view of the Department of Labor, departed from the holdings of other circuits, and interpreted the statutory language in

---

[*] The third judge on the original panel, District Judge Frederick J. Kapala, did not participate in the petition for rehearing or the petition for rehearing en banc.

a way that I believe is contrary to the understanding of Congress.

Section 15(a)(3) of the Fair Labor Standard Act ("FLSA") makes it unlawful for an employer "to discharge or in any manner discriminate against any employee because such employee has *filed any complaint* or instituted or caused to be instituted any proceeding, under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3) (emphasis mine). As the Equal Employment Opportunity Commission and the Department of Labor point out, a number of other statutes have anti-retaliation provisions containing language that is similar if not identical to this text. *See* 29 U.S.C. § 660(c)(1) (Occupational Safety and Health Act) (proscribing retaliation against "any employee because such employee has filed any complaint . . . under or related to this chapter . . ."); 29 U.S.C. § 1855(a) (Migrant and Seasonal Agricultural Worker Protection Act) (proscribing retaliation against worker who "has, with just cause, filed any complaint . . . under or related to this chapter . . ."); 33 U.S.C. § 1367(a) (Clean Water Act) (proscribing retaliation against employee who "has filed, instituted, or caused to be filed or instituted any proceeding under this chapter"); 42 U.S.C. 6971(a) (Solid Waste Disposal Act) (proscribing retaliation against any employee who "has filed, instituted, or caused to be filed or instituted any proceeding under this chapter . . ."). The court's understanding of what the FLSA's "filed any complaint" language means portends a similar construction of those other statutes.

These anti-retaliation provisions play a vital role in protecting the workplace rules that Congress has adopted. They serve to protect not just the individual worker, but the means by which federal agencies become aware of unlawful labor practices. As the Supreme Court has observed with respect to section 15(a)(3) of the FLSA:

> For weighty practical and other reasons, Congress did not seek to secure compliance with prescribed standards through continuing detailed supervision or inspection of payrolls. Rather, it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances. This ends the prohibition of § 15(a)(3) against discharges and other discriminatory practices was designed to serve. For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions. By the proscription of retaliatory acts set forth in § 15(a)(3), and its enforcement in equity by the Secretary [of Labor] in section 17, Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced.

*Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S. Ct. 332, 335 (1960) (citation omitted).

The court in this case rightly concluded that "filed any complaint" reaches complaints that an employee makes to his employer. 570 F.3d at 837-38. Nothing in the

statute suggests that the complaint must be made exter-
nally to an administrative or judicial body in order to
qualify for protection. On the contrary, reference to "any
complaint" counsels in favor of a broad understanding
that encompasses both internal and external complaints.
*See*, *e.g.*, *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 41 (1st
Cir. 1999). As the court noted, this is the understanding
adopted by the "vast majority" of the circuits. 570 F.3d
at 838; *see Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 625-
26 (5th Cir. 2008); *Moore v. Freeman*, 355 F.3d 558, 562-63
(6th Cir. 2004); *Lambert v. Ackerley*, 180 F.3d 997, 1003-07
(9th Cir. 1999) (en banc); *Valerio*, 173 F.3d at 41-44; *Conner
v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997);
*EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011-12 (11th
Cir. 1989); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179,
181-82 (8th Cir. 1975); *contra Whitten v. City of Easley*, 62
Fed. Appx. 477, 480 (4th Cir. 2003) (unpublished); *Lambert
v. Genesee Hosp.*, 10 F.3d 46, 55-56 (2d Cir. 1993). But the
court went on to conclude that the use of the term "filed"
suggests that a complaint must be written in order to
come within the statute's protection. 570 F.3d at 838-40.
"[T]he natural understanding of the phrase 'file any
complaint' requires the submission of some writing to
an employer, court, or administrative body." *Id.* at 839.
For that reason, the court rejected the multiple deci-
sions from other circuits recognizing that oral as well as
written complaints are protected by the statute. *See Lam-
bert*, 180 F.3d at 1008; *EEOC v. Romeo Cmty. Sch.*, 976
F.2d 985, 989-90 (6th Cir. 1992); *White & Son Enters.*, 881
F.2d at 1011-12; *Marshall v. Parking Co. of Am.-Denver, Inc.*,
670 F.2d 141, 142-43 (10th Cir. 1982); *Maxey's Yamaha*, 513

F.2d at 181-82; *see also Hagan*, 529 F.3d at 626 (assuming that objections voiced orally to management regarding work schedule change that decreased overtime pay might be protected by FLSA, but concluding that because objections were framed in personal terms rather than in terms of potential illegality were beyond scope of statute); *Brock v. Richardson*, 812 F.2d 121, 123-25 & n.2 (3d Cir. 1987) (employer's decision to discharge plaintiff based on mistaken belief that she had filed complaint, when in fact she had only spoken with agency investigator, was prohibited by FLSA).[1] It also rejected what has been the Department of Labor's view for nearly fifty years. *See Goldberg v. Zenger*, 43 Lab. Cas. (CCH) ¶ 31,155, at 40,986 (D. Utah 1961) (DOL action on behalf of employee who cooperated with agency's investigation and insisted that employer pay him back wages in lump sum rather than installments).

---

[1] A number of district courts in this circuit have taken a similar view. *See Ergo v. Int'l Merchant Servs., Inc.*, 519 F. Supp. 2d 765, 778-79 (N.D. Ill. 2007) (Leinenweber, J.); *Hernandez v. City Wide Insulation of Madison, Inc.*, 508 F. Supp. 2d 682, 689-90, 692 (E.D. Wis. 2007) (Adelman, J.); *Skelton v. Am. Intercont'l Univ. Online*, 382 F. Supp. 2d 1068, 1076 (N.D. Ill. 2005) (Kennelly, J.); *DeGrange v. Richard Wolf Medical Instruments Corp.*, 141 Lab. Cas. (CCH) ¶ 34,147, 2000 WL 1368043, at *2-*3 (N.D. Ill. Sep. 15, 2000) (Guzmán, J.); *Wittenberg v. Wheels, Inc.*, 963 F. Supp. 654, 658-60 (N.D. Ill. 1997) (Coar, J.); *Cuevas v. Monroe Street City Club*, 752 F. Supp. 1405, 1412-13 (N.D. Ill. 1990) (Shadur, J.); *see also Wilke v. Salamone*, 404 F. Supp. 2d 1040, 1047-48 (N.D. Ill. 2005) (Moran, J.) (deliberate failure to show up for work that employees knew would be uncompensated was protected).

Although I agree that the term "to file" often connotes (particularly for lawyers) the submission of a document, it is by no means out of the ordinary to read and hear the term used in conjunction with oral complaints; in that sense, "to file" is used more broadly to signify the making of a report or the lodging of a protest. Thus, the notion that one can "file" an oral complaint or grievance is reflected in any number of federal opinions and regulations. *See*, *e.g.*, *NLRB v. Sw. Elec. Co-op., Inc.*, 794 F.2d 276, 279 (7th Cir. 1986) (sustaining NLRB's finding that collective bargaining agreement included "the right to file oral grievances"); *United States v. Bent*, 702 F.2d 210, 212 (11th Cir. 1983) ("Before trial appellant orally filed a motion for a jury trial, which the court denied."); *Ward v. Housatonic Area Reg'l Transit Dist.*, 154 F. Supp. 2d 339, 351 (D. Conn. 2001) ("Clearly, any written or oral complaints that Wa[rd] filed with HART were protected speech . . . ."); *Rallis v. Holiday Inns, Inc.*, 622 F. Supp. 63, 65 (N.D. Ill. 1985) ("Plaintiffs' complaint alleges that their grievances were ignored after they had filed more than 20 oral and written grievances over an eight year period of time."); 42 C.F.R. 438.402(b)(3) (specifying that certain managed care entities and insurance plans must have grievance procedures that permit enrollee to "file a grievance either orally or in writing" and to "file an appeal either orally or in writing"); *cf.* 14 C.F.R. 1.1 (defining "flight plan" to mean information about intended flight path "that is filed orally or in writing with air traffic control"). These examples (and there are many others) put to rest the notion that filing a complaint invariably means filing a *written* complaint.

At the same time, it is noteworthy that Congress in many other statutes has specifically required written complaints. *See*, *e.g.*, 2 U.S.C. § 437g(a)(1) (Federal Election Campaign Act) ("Any person who believes a violation of this Act . . . has occurred, may file a complaint . . . . Such complaint shall be in writing . . . ."); 5 U.S.C. § 3330a(a)(1)(A) & (a)(2)(B) (Veterans Employment Opportunities Act) (preference-eligible veteran who believes agency has violated his or her rights may file complaint; "[s]uch complaint shall be in writing . . ."); 7 U.S.C. § 193(a) (Packers and Stockyards Act) (whenever the Secretary of Agriculture believes a packer or swine contractor is committing violations, "he shall cause a complaint in writing to be served upon the packer or swine contractor, stating his charges in that respect . . ."); 7 U.S.C. § 228b-2(a) (same—poultry dealers); 7 U.S.C. § 1599(a) (Federal Seed Act) (same—seed and grain handlers); 19 U.S.C. § 2561(a) (Trade Agreements Act) (federal agency may not consider a complaint unless the Trade Representative informs the agency concerned "in writing"); 38 U.S.C. § 4322(a) & (b) (Uniformed Services Employment and Reemployment Act) (person claiming violation of right to employment or reemployment as veteran may file complaint; "[s]uch complaint shall be in writing. . ."); 42 U.S.C. § 2000b(a) (Civil Rights Act of 1964) (public accommodations) ("Whenever the Attorney General receives a complaint in writing . . . the Attorney General is authorized to institute for or in the name of the United States a civil action . . . ."); 42 U.S.C. § 2000c-6(a) (same—public education); 42 U.S.C. § 3610(a)(1)(A)(i) & (ii) (Fair Housing Act) (person aggrieved by discriminatory

housing practice may file complaint with Secretary of Housing and Urban Development, and Secretary may also file complaint; "[s]uch complaints shall be in writing . . . "); 42 U.S.C. § 15512(a)(2)(C) (Help America Vote Act) ("Any complaint filed under the procedures shall be in writing and notarized, . . . ."); 47 U.S.C. § 554(g) (Cable Communications Policy Act) (complaint by employee or applicant for employment who believes he or she was victim of discrimination by cable operator "shall be in writing, and shall be signed and sworn to by that person"); 49 U.S.C. § 46101(a)(1) (Federal Aviation Act) ("[a] person may file a complaint in writing" for violation of the Act or its implementing rules and regulations). These statutes suggest that when Congress means to require that complaints take a written form, it sets forth that requirement expressly. *See*, *e.g.*, *Whitfield v. United States*, 543 U.S. 209, 216-17, 125 S. Ct. 687, 692 (2005).

Our own previous opinions in *Sapperstein v. Hager*, 188 F.3d 852 (7th Cir. 1999), and *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219 (7th Cir. 1995), arguably reflect an understanding of the statutory language that reaches oral as well as written complaints: *Sapperstein* equated the "file any complaint" language with reporting a potential violation of the statute, *see* 188 F.3d at 857, an act which may be accomplished orally as well as by writing, and *Avitia* cited an employee's oral statement to a Department of Labor auditor as protected conduct, 49 F.3d at 1223-24.

Conditioning the protection of the statute on the submission of a written complaint may well mean that ag-

grieved employees will be treated differently based on happenstance. An employee who schedules a meeting with a human resources manager to discuss the denial of overtime pay will not be protected, no matter how detailed and unequivocal the oral complaint may be, while an employee who cannot catch the manager in her office and instead leaves her a handwritten note or sends her an e-mail to communicate the same sort of complaint will be protected. I submit that the focus is more appropriately on whether the complaining employee has communicated the substance of his concerns to the employer rather than on whether the communication was written. *See Lambert*, 180 F.3d at 1008. In this way a court can distinguish between statements that are made in furtherance of an employee's statutory rights from those that amount to no more than vague, "abstract grumblings." *Id.* at 1007 (citing *Valerio*, 173 F.3d at 44).

It also bears pointing out that nothing in the court's holding or rationale limits its narrow construction of the statutory language to intra-company complaints. The court's decision that only written complaints are protected presumably would apply to an employee's external contacts with regulatory officials. *See* 570 F.3d at 839. Yet, other courts have understood the statute to reach oral contacts with an agency as well as oral co-operation with agency auditors. *See, e.g.*, *Daniel v. Winn-Dixie Atlanta, Inc.*, 611 F. Supp. 57, 59 (N.D. Ga. 1985) (employee's phone call to Department of Labor's Wage and Hour Division to inquire whether employer could lawfully deny her overtime compensation was protected by section 215(a)(3); otherwise, "an employee who con-

sulted, but did not file a complaint with, W&H and who informed her employer first would not be protected as long as the employer fired her before she actually could file a complaint"); *Prewitt v. Factory Motor Parts, Inc.*, 747 F. Supp. 560, 563-64 (W.D. Mo. 1990) (telephone call to Wage and Hour Division to inquire whether employer's new salary plan and work schedule were lawful was protected by section 215(a)(3); "[a] prerequisite to an employee knowing whether to file a complaint is having information about whether an employer's actions may violate the FLSA"); *see also Avitia*, *supra*, 49 F.3d at 1223-24 (finding evidence sufficient to support finding of retaliation against employee who was fired after he told Department of Labor auditor that he had worked overtime without being compensated at statutory overtime rate of one and one-half times his regular hourly pay). By departing from such decisions, the court has left protected by the statute only those interactions with agency representatives that take place in written form, notwithstanding the fact that oral communications are just as essential to an employee attempting to ascertain her rights and to the Department of Labor in discovering potential violations of the FLSA, and notwithstanding the likelihood that an employer bent on keeping its practices out of view of the regulators might be just as likely to penalize an employee for her oral contacts with the agency as it would any written contacts.

It was precisely these type of inconsistencies that the Supreme Court sought to avoid in *NLRB v. Scrivener*, 405 U.S. 117, 92 S. Ct. 798 (1972), where it construed the anti-

retaliation provision of the National Labor Relation Act ("NLRA"), which uses language similar to that of the FLSA. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 723-24, 67 S. Ct. 1473, 1473-74 (1947) (noting that decisions interpreting coverage of NLRA have persuasive force as to coverage of FLSA). Section 8(a)(4) of the NLRA makes it an unlawful practice for an employer "to discharge or otherwise discriminate against an employee because he has *filed charges* or given testimony under this sub-chapter." 29 U.S.C. § 158(a)(4) (emphasis supplied). In *Scrivener*, four employees were fired after they were interviewed by and gave sworn written statements to a National Labor Relations Board ("NLRB") field examiner investigating charges of unfair labor practices that had been filed against their employer. None of the discharged employees had themselves filed charges with the NLRB prior to their discharge; they had simply given evidence to the field examiner. The NLRB concluded that the discharges were in violation of section 8(a)(4), 177 N.L.R.B. 504 (1969), but the Eighth Circuit disagreed, concluding that the statute did not prohibit retaliation against an employee who has done nothing more than give a written statement to a field examiner. 435 F.2d 1296 (1971) (per curiam). The Supreme Court sided with the NLRB. "Construing § 8(a)(4) to protect the employee during the investigative stage, as well as in connection with the filing of a formal charge or the giving of formal testimony, comports with the objective of that section," the Court noted at the outset. 405 U.S. at 121, 92 S. Ct. at 801. " 'Con-gress made it clear that it wishes all persons with infor-mation about such [illegal] practices to be completely

free from coercion against reporting them to the Board.'" *Ibid.* (quoting *Nash v. Fla. Indus. Comm'n*, 389 U.S. 235, 238, 88 S. Ct. 362, 365 (1967)). Having in mind "the practicalities of appropriate agency action," *id.* at 123, 92 S. Ct. at 802, the Court did not think it was logical to protect an employee who has filed a charge or given testimony in an agency proceeding, but not one who has participated in the necessary steps leading up to the filing and prosecution of a charge:

> An employee who participates in a Board investigation may not be called formally to testify or may be discharged before any hearing at which he could testify. His contribution might be merely cumulative or the case may be settled or dismissed before hearing. Which employees receive statutory protection should not turn on the vagaries of the selection process or on other events that have no relation to the need for protection. It would make less than complete sense to protect the employee because he participates in the formal inception of the process (by filing a charge) or in the final, formal presentation, but not to protect his participation in the important developmental stages that fall between these two points in time. This would be unequal and inconsistent protection and is not the protection needed to preserve the integrity of the Board process in its entirety.

*Id.* at 123-24, 92 S. Ct. at 802 (footnote omitted). The Court thus concluded that the discharge of the four employees constituted actionable retaliation under the NLRA, not-

withstanding the fact that none of the employees had actually filed a charge or given testimony. *Id.* at 125, 92 S. Ct. at 803.

We would do well to heed the logic and warnings of both *Robert DeMario Jewelry* and *Scrivener* in construing the reach of FLSA. Congress has designed a scheme in which individual employees play a crucial role in identifying potential violations of the FLSA and bringing them to the attention of the Department of Labor. *Robert DeMario Jewelry*, 361 U.S. at 292, 80 S. Ct. at 335. This court's decision that an employee's intra-company complaint is protected by section 15(a)(3) pays appropriate homage to that role by extending the statute's reach to the earliest opportunity that an employee has to assert his statutory rights—in the workplace, with his employer. Although the employee has filed nothing and testified to nothing at that point in time, he has nonetheless taken the first step toward the vindication of his rights. If he is penalized for taking that step, he (and his co-workers) might well take no other. That is why, as *Scrivener* explains, it is necessary to construe phrases like "filed charges" or "filed any complaint" liberally to include not only those ultimate acts but all of the necessary preceding steps that culminate in those acts. 405 U.S. at 123-24, 92 S. Ct. at 802. And that is why, in my view, it makes "less than complete sense" to draw a distinction between an employee's written and oral assertions of his rights. *See id.* at 124, 92 S. Ct. at 802. As the cases make clear, virtually any step that an employee may take in pursuit of his rights prior to filing a complaint with the Department of Labor—e.g., inquiring

into his rights, questioning the legality of his wages and hours, or cooperating with a Department of Labor investigation—he may do by way of the spoken as well as the written word. Oral inquiries, protests, and information supplied to an agency representative play no less an important role in the statutory scheme than do letters, e-mails, and sworn statements. They must be protected as well.

For these reasons, I believe this case warrants further consideration by the full court, and I respectfully dissent from denial of rehearing en banc.