Sandra M. SCOTT, Plaintiff–Appellant,

v.

SUNRISE HEALTHCARE CORPORA-
TION, a subsidiary of Sun Healthcare
Group, Inc. d/b/a Colonial Manor
Healthcare Center, Defendant–Appel-
lee.

No. 98–2873.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 30, 1999.

Decided Oct. 28, 1999.

Rehearing Denied Dec. 9, 1999.

Ernest T. Rossiello (argued), Rossiello & Associates, Chicago, IL, Fred R. Kimmel, Kimmel & Associates, Chicago, IL, for Plaintiff–Appellant.

Holly A. Hirst (argued), Rudnick & Wolfe, Chicago, IL, for Defendant–Appellee.

Before WOOD, JR., COFFEY, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Sandra Scott appeals from an order granting summary judgment for her employer, Sunrise Healthcare Corporation, d/b/a Colonial Manor Healthcare Center, in this case brought under 29 U.S.C. §§ 207(a), 216(b), and 215(a)(3) of the Fair Labor Standards Act (FLSA), the Illinois Nursing Home Care Act, 210 ILCS 45/3–608, and the Abused and Neglected Long Term Care Facility Residents' Reporting Act, 210 ILCS 3¾ et seq. She claims she was discharged in retaliation for her complaints about unpaid overtime and because she reported patient abuse to the Illinois Department of Public Health (IDPH). Because summary judgment was granted against her, we view the facts in her favor, not, of course, vouching for their accuracy.

Scott was hired as a data entry clerk at Colonial Manor in September 1994. She was responsible for putting certain forms and patient care plans into a computer. She was able to complete approximately two care plans a day, which was the approximate number prepared by Diane Johnson, the person who was care plan coordinator when Scott began to work at Colonial Manor. In November, Johnson gave Scott a written performance evaluation that was generally positive, commending her for completing work in "a timely fashion" and for managing "a large volume of paperwork efficiently." However, Johnson also stated in her evaluation that Scott should "decrease dependence of residents on her—Residents tend to gravitate to her and distract her from her work."

At the end of November 1994 Johnson went on medical leave, and in December Mary Ann Conte became care plan coordinator. Conte reported to Ann Schultz, the director of nursing. Conte was assisted by two other persons in preparing patient care plans; as a result, more care plans were being prepared and they were prepared faster than Scott could process them. On January 12, 1995, Conte met with Scott and gave her a written "Notice of Corrective Action," which cited four infractions: lack of cooperation, attitude, poor work performance, and insubordination. Conte wrote, "This employee is argumentative, uncooperative, and spends a majority of the day socializing and interfering with nursing functions. Out of 105 [care plans], she has entered only 30—this is unacceptable. Repeatedly refuses to follow instructions of her direct [supervisor]."

Scott says she frequently worked overtime but was not paid for it. Specifically, she was not paid overtime when she worked "family nights" and when she worked through her lunch period. David Carmichael, the administrator at Colonial Manor, was the one who authorized the overtime, and he was the one with whom Scott discussed the failure to pay overtime wages. In mid-January 1995 Carmichael left Colonial Manor. It appears that Carmichael and a Joan Dallman are the only people to whom Scott complained about overtime.

Scott also claimed that she was concerned about patient abuse and neglect.

Scott noticed that patient Mary L. had a "huge bruise" on her chest, and Scott urged the patient to report the injury. Scott befriended another patient, Barry F. In fact, Scott's superiors warned her to spend less time socializing with him. On January 19 Barry F. came to Scott's office, "crying and complaining that his feet hurt." Scott told him to go to the nurses' station for treatment but Conte ordered him to leave the station. He did not receive any treatment. Scott was upset that Barry F. had been refused treatment, and so she went back to her office and wrote a complaint; she then asked the receptionist for the hotline telephone number for reporting abuse to the IDPH. The receptionist referred her to a posted notice which set out the hotline number, which Scott called to obtain a fax number. She then, on the same day, faxed the handwritten complaint to her boyfriend and asked him to fax it to the IDPH. A week later, Myra Taylor, a representative from the IDPH, conducted an inspection at Colonial Manor. At the time of the inspection, Taylor did not identify Scott as the source of the complaint. However, it was clear that the investigation centered around the treatment of Barry F. and that Scott was concerned with Barry F. The assistant nursing director asked Scott to be available to talk with Taylor although, as it turned out, Scott and Taylor did not talk at that time.

The following week, on February 3, 1995, Ann Schultz gave Scott a "Notice of Corrective Action," which informed her that she had been suspended and that subject to review by the interim administrator of Colonial Manor, Paul Notterman, she would be discharged for "sub-standard performance." Scott specifically asked whether she was being fired for her complaints, and Schultz did not respond. On February 8, Notterman discharged Scott. Prior to taking that action he had spoken with both Conte and Schultz. Both women denied knowledge of Scott's complaints.

■ Scott's case in the district court set out retaliatory discharge claims based on two theories. The first is a claim under § 215 of the FLSA, which prohibits an employer from discriminating against an employee in retaliation for asserting an FLSA claim. To establish a prima facie case of retaliation Scott had to show that she engaged in protected expression, that she suffered an adverse employment action, and that a causal link existed between the protected expression and the adverse action. *Eiland v. Trinity Hospital,* 150 F.3d 747 (7th Cir.1998). Her second claim is based on the Illinois state-law tort of retaliatory discharge for her complaints about alleged abuse and neglect at Colonial Manor. To state a claim she must show that she was discharged, that the discharge was in retaliation for her activities, and that the discharge violated a clear mandate of public policy. *Meister v. Georgia–Pacific Corp.,* 43 F.3d 1154 (7th Cir. 1995). The district court granted Colonial Manor's partial summary judgment motion in which it sought dismissal of these two claims. The court determined that Scott had not established the causal link between her complaints and the employment action. A consent judgment for her very minor overtime claim plus liquidated damages was entered. Scott appeals the grant of summary judgment.

We review decisions on summary judgment *de novo* and, as we previously noted, we evaluate the factual record in the light most favorable to the party opposing the motion. All reasonable inferences are resolved in favor of the nonmoving party, in this case Ms. Scott. *Johnson v. City of Fort Wayne, Ind.,* 91 F.3d 922 (7th Cir. 1996).

■ We agree with the district court that Scott failed to show a causal connection between her complaints to Carmichael about the failure to pay overtime wages and her discharge by Ann Schultz and Paul Notterman, a discharge occurring a few weeks after Carmichael left Colonial Manor and who knows how long after her complaint. Scott does not pin down the time period when she complained to Carmichael. While we agree with Scott that

circumstantial evidence may be used to allow a plaintiff to survive a summary judgment motion, we see no circumstances here—and on the overtime claim Scott does not help us to find any—which would allow an inference that her discharge was in retaliation for her complaint regarding overtime pay.

■ As the district judge realized, however, the claim based on her complaint about patient abuse is a closer call. We do not think—as Scott's attorney seems to imply—that saying, as the judge here did, that the "state law retaliatory discharge claim presents a somewhat stronger circumstantial case" means that the judge was wrong to dismiss it. Acknowledging that a question is a close one does not mean that the answer a judge finds is bound to be wrong. That said, we agree that this claim presents a close question, and our *de novo* review causes us, this time, to come down on the opposite side of the line from the district judge.

■ Colonial Manor argues that the affidavits filed show that the decisionmaker, Paul Notterman, did not know about the complaints. But for purposes of summary judgment, Scott does not need to prove that Colonial actually knew of her complaints. Summary judgment is not proper when one can infer that persons who recommended the employment action had knowledge of the complaint. *Dey v. Colt Const. & Development Co.*, 28 F.3d 1446 (7th Cir.1994). Furthermore, a showing that the adverse employment action occurred on the heels of the protected activity is indirect evidence of retaliation. *Johnson v. City of Fort Wayne; Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307 (7th Cir.1989); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir.1992).

As we have said, it is clear that Scott's relationship with Barry F. was widely known among the work force. She, in fact, received criticism about it in a performance evaluation. Just before sending her anonymous report to ILPH, she asked a co-worker for the hotline number. The report was sent to her boyfriend, who in turn faxed it to ILPH. His fax number appeared on the report. Astonishingly quickly, an inspector turned up at Colonial Manor to investigate allegations of abuse to Barry F. A supervisor asked Scott to be available to talk to the inspector, although as it turned out she was not interviewed until after her discharge. A week later Scott was suspended and then ultimately terminated. Notterman, the decisionmaker as to the termination, stated in an affidavit that Scott never complained about the treatment of residents and that he did "have knowledge" that she had filed a complaint. Notterman's decision to terminate Scott, however, was based on the recommendations of Schultz and Conte, who were aware of Scott's relationship with Barry F. In the small universe of employees at Colonial Manor, it is reasonable to infer that a grapevine exists. These circumstances are enough to create a triable issue of fact.

Accordingly, we AFFIRM the grant of summary judgment dismissing the Fair Labor Standards Act claim. We REVERSE the grant of summary judgment on the claim based on the Illinois Reporting Act and REMAND that claim to the district court for further proceedings. Each side shall bear their own costs.