*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0014P (6th Cir.)
File Name: 04a0014p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

CHARLES W. MOORE,
  *Plaintiff-Appellee (01-6372);*
  *Plaintiff-Appellant (01-6536),*

  *v.*

MOSES FREEMAN, in his
individual and official
capacities, and THE CITY OF
CHATTANOOGA,
  *Defendants-Appellants*
  *(01-6372);*
  *Defendants-Appellees*
  *(01-6536).*

Nos. 01-6372/6536

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 00-00072—R. Allan Edgar, Chief District Judge.

Argued: October 21, 2003

Decided and Filed: January 13, 2003

Before: KEITH, DAUGHTREY, and GILMAN, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** Michael A. McMahan, NELSON, McMAHAN
& NOBLETT, Chattanooga, Tennessee, for Defendants.
Reuben N. Pelot IV, EGERTON, McAFEE, ARMISTEAD &
DAVIS, Knoxville, Tennessee, for Plaintiff. **ON BRIEF:**
Michael A. McMahan, Kenneth O. Fritz, NELSON,
McMAHAN & NOBLETT, Chattanooga, Tennessee, for
Defendants. Reuben N. Pelot IV, Ronald T. Hill, EGERTON,
McAFEE, ARMISTEAD & DAVIS, Knoxville, Tennessee,
for Plaintiff.

_____

## OPINION

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge. The
defendants, Moses Freeman and the City of Chattanooga,
appeal from a jury verdict awarding the plaintiff, Charles
Moore, back pay and damages for emotional and mental
distress, based on his claim of retaliation under the Fair Labor
Standards Act, 29 U.S.C. §§ 201 – 219 (FLSA). The
defendants claim (1) that there was insufficient evidence to
support the jury's finding that they retaliated against Moore,
(2) that damages for emotional and mental distress are not
recoverable under the applicable provision of the FLSA, and
(3) that the verdict was excessive. Because we conclude that
the evidence of retaliation was sufficient to support the
verdict and that damages for emotional and mental distress
were properly recovered under the Act, we affirm the district
court's judgment sustaining the jury verdict in the plaintiff's
favor.

On cross-appeal, the plaintiff contends that the district court
erred in reducing his request for attorney's fees by five-sixths
on the theory that he had prevailed on only one of his six

claims. This use of a mathematical formula constituted an abuse of discretion under existing Sixth Circuit precedent and will require a remand for correction. The plaintiff also contends that the damages should be doubled as liquidated damages, but we conclude that this issue is not properly before us on appeal.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff Charles Moore was hired by the City of Chattanooga in October 1997 as a code inspector in the city's housing division. His initial annual salary, and that of Joseph Sheats, who started in the same position on the same day as Moore, was $20,777. Also hired as a code inspector on that day was Mary Hutson, at a starting salary of $26,751. Hutson is a white woman; Moore and Sheats are both black men. The defendant, Moses Freemen, who was the department's administrator at the time the three new hires began, claimed that Hutson was paid more because of her prior work experience and training and because she had turned down the job at the original salary. On the other hand, plaintiff Moore later testified that when he asked whether the salary was negotiable, he was told it was not.

Several months later, when Moore learned of the disparity between his and Hutson's salaries, he raised the issue with Freeman at a February 1998 staff meeting and was told by Freeman that he would work to get Moore's salary raised. Before that meeting, Hutson had complained to Freeman that she was being mistreated by some of her co-workers. She complained again after the meeting and also reported to her direct supervisor, Dan Thomas, that she felt that other people in the office resented her and that she was caught in a hostile work environment. In particular, she complained of some interactions she had had with some of her black co-workers, including both Moore and Sheats, that she felt were negative. Thomas reported the latter conversation to Freeman, who directed Thomas to conduct an investigation into Hutson's

allegations. Thomas did so but concluded to his own satisfaction that the work environment was not hostile.

According to Freeman, by April 1998 the office was in such turmoil that he felt compelled to take some action to regain control. Concluding that the problems had begun about the time that Moore, Hutson, and Sheats had started working in the housing department, Freeman decided to fire all three of them. Before he could carry out this plan, however, Hutson told Freeman she was quitting, and Freeman placed her on two weeks paid administrative leave. He later testified that he took this action because he wanted to terminate all three employees collectively and because he was worried Hutson was "building a case against the city." Around the same time, Freeman directed Thomas to extend the probationary periods for Moore, Sheats, and Hutson an additional 90 days beyond the normal six-month period imposed on new employees. Freeman apparently accepted Hutson's resignation on April 28, 1998. Two days later, he fired Moore, who then remained unemployed for approximately four months before securing a new, better-paying job.

At trial, Moore testified that the experience of being fired was "demoralizing," like being "slapped in the face." He said that he had worried about paying the family's bills and that he lost his health insurance and had to pull his children out of their soccer league because he feared that they might get injured at a time when he had no insurance coverage. He also testified that the stress of having lost his job affected his relationship with his children – one of whom drew a picture of him as a monster – and with his wife. Moore's wife testified that Moore had trouble sleeping during the period he was between jobs, and a friend of his testified that Moore became short-tempered, lost his appetite, and began having neck pains.

Moore and Sheats had originally filed a joint complaint in federal court against the City of Chattanooga and several city

officials under the FLSA, the Equal Pay Act, 29 U.S.C. § 206(d), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e – 2000e-17, and the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101 – 1004. However, Sheats entered a voluntary dismissal, and Moore proceeded to trial alone. At its conclusion, the district court granted the defendants' motion for judgment as a matter of law in part, and the only claims that went to the jury were Moore's claims against Freeman in his official capacity and against the City under the FLSA, the Equal Pay Act, and the Tennessee Human Rights Act for sex discrimination. The jury found that defendants did not violate the Equal Pay Act or discriminate against Moore based on sex. It did find, however, that the defendants violated the FLSA by discharging Moore in retaliation for his complaints about unequal pay and awarded him $10,232 in back pay and $40,000 for mental and emotional distress.

The City then filed a motion for remittitur on the back pay award and asked that the remainder of the award be set aside, contending that mental and emotional damages are not authorized by the FLSA. Moore filed a request for attorney's fees and costs and moved to alter or amend judgment by doubling the compensatory damages as liquidated damages. The district court reduced the back-pay award to $7,200 but denied the rest of the defendants' motion, holding that damages for mental and emotional distress due to retaliation can be recovered under the FLSA and finding that the damage award of $40,000 was not excessive. The court also denied Moore's motion to alter or amend the judgment, noting that an award of damages to employees who suffered from retaliation was compensatory in nature and that liquidated damages would not further this purpose. Finally, the court reserved ruling on the plaintiff's motion for attorney's fees and asked for further documentation, specifically on the amount of time spent on legal issues and whether the work was expended on behalf of Moore or Sheats. Moore submitted more information, but the district court found that it was still not sufficiently specific. The district judge

therefore awarded Moore one-sixth of the attorney's fees and costs he had requested, on the theory that he had prevailed on only one of the six claims he brought in the original complaint. The defendants have appealed the jury verdict and the damage award approved by the district court. The plaintiff has cross-appealed the calculation of attorney's fees and costs.

## II. *DISCUSSION*

### A. Sufficiency of the Evidence

The defendants assert that the plaintiff did not sufficiently prove that he engaged in statutorily-protected activity, that his dismissal was related to the protected activity, or that the defendants' proffered reason why the plaintiff was dismissed was pretextual, addressing each of these contentions under the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and urging that we find that the plaintiff failed to establish a *prima facie* case of retaliation. We have held, however, that "after a trial on the merits, a reviewing court should not focus on the elements of the prima facie case but should assess the ultimate question of discrimination." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 821 (6th Cir. 2000) (citing *EEOC v Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997)). We have, nevertheless, recognized that whether the plaintiff made out a prima facie case may be "relevant to our review of that ultimate question." *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 599 (6th Cir. 2001).

Moore was clearly engaged in statutorily-protected activity, given the fact that the anti-retaliation provisions of the FLSA can be triggered by informal complaints, *see EEOC v. Romeo Cmty. Schs.*, 976 F.2d 985, 989-90 (6th Cir. 1992), and that the defendants do not dispute that Moore protested to Freeman about his unequal pay. Although the defendants continue to argue that the issue of Moore's pay was resolved by the time Moore was fired, that argument goes to whether

the complaint was the cause of the termination, not to whether it was statutorily protected.

Viewing the evidence in the light most favorable to Moore, we conclude that a jury could reasonably have found that he was discharged in retaliation for his complaints. Moore was fired less than three months after protesting his unequal pay in spite of the fact that his immediate supervisor found him competent at his job and opposed his dismissal. The jury may have interpreted Freeman's calling Moore "incorrigible" at trial, as well as testimony that Freeman asked police to be on standby when he fired Moore, to mean that he thought Moore was a troublemaker due to his complaints about his unequal pay. The jury may also have found Freeman's explanation that he intended to fire Moore, Sheats, and Hutson collectively to be pretextual, based on evidence that Freeman had placed Hutson on paid leave when she first tried to resign and that Hutson had complained about a number of employees besides Moore and Sheats, yet those other employees were not terminated. In short, although the evidence to support the jury's verdict was not overwhelming, we cannot say that it was legally insufficient.

**B. The Availability of Damages for Mental and Emotional Distress**

Damages for violation of the anti-retaliation provisions of the FLSA are controlled by 29 U.S.C. § 216(b), which provides in pertinent part:

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

The question here is whether this broad provision, which was added to the FLSA in 1977, *see* Fair Labor Standards Amendments of 1977, Pub. L. No. 95-151, §10, 91 Stat. 1245, 1252, allows for damages for mental and emotional distress. We conclude that it does.

Although the provision does not explicitly allow damages for emotional injuries, a plain reading of the text of the provision indicates that it does not limit the type of damages that are available. As the Seventh Circuit pointed out in *Travis v. Gary Community Health Center, Inc.*, 921 F.2d 108, 112 (7th Cir. 1990), "the 1977 amendment does away with the old limitations without establishing new ones." It allows any legal or equitable relief that is appropriate to further the purposes of § 215(a)(3), one of which is to ensure that employees feel free to report grievances under the FLSA. *See Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960) ("Plainly, effective enforcement could . . . only be expected if employees felt free to approach officials with their grievances. This [is the end that] the prohibition of [§215)a)(3)] against discharges and other discriminatory practices was designed to serve."). The statutory scheme contemplates compensation in full for any retaliation employees suffer from reporting grievances, and there is no indication that it would not include compensation for demonstrable emotional injuries, as well as economic ones.

The delineation within § 216(b) of potential forms of relief that are compensatory – "employment, reinstatement, promotion, and the payment of wages lost" – further supports the conclusion that "the evident purpose of section 216(b) is compensation." *Snapp v. Unltd. Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000), *cert. denied*, 532 U.S. 975 (2001); *see also Lanza v. Sugarland Run Homeowners Ass'n, Inc.*, 97 F.Supp.2d 737, 740 (E.D. Va. 2000) ("This scheme makes clear that § 216(b) is designed to compensate the aggrieved employee . . . ."). The defendants contend that damages for emotional distress are not similar in type to the listed forms of relief and argue that under the doctrine of *ejusdem generis*,

such damages should not be found to be recoverable under § 216(b). However, like the forms of relief mentioned, damages for mental anguish are intended to compensate the injured party for harm suffered.

As noted by the Seventh Circuit, which is the only other circuit to address at length the question of whether the provision of §216(b) at issue here provides for damages for emotional distress, the provision allows for "appropriate" relief, and "compensation for emotional distress . . . [is] appropriate for intentional torts such as retaliatory discharge." *Travis*, 921 F.2d at 112. In addition, both the Eighth and Ninth Circuits have allowed damages for emotional distress to stand without directly addressing the issue. *See Broadus v. O.K. Indus., Inc.*, 238 F.3d 990, 992 (8th Cir. 2001); *Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999). Although the circuits are divided on the question of whether the statute permits punitive damages, *compare Travis*, 921 F.2d at 111-12, *with Snapp*, 208 F.3d at 934, consensus on the issue of compensatory damages for mental and emotional distress seems to be developing. We now join our sister circuits in finding that the damages awarded by the jury in this case fall within the ambit of § 216(b).

### C. The Size of the Jury's Award for Mental and Emotional Distress

The district court upheld the jury's award of $40,000 for mental and emotional distress, a ruling that we review for abuse of discretion. *See Sallier v. Brooks*, 343 F3d. 868, 880 (6th Cir. 2003) (citing *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 443) (6th Cir. 2000)). "A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court." *Sallier*, 343 F.3d at 880, (quoting *Gregory*, 220 F.3d at 443).

There is no claim here that the verdict resulted from passion, bias, or prejudice. The question thus becomes whether the verdict was so clearly excessive as to "shock the judicial conscience." Though the award could be reasonably described as fulsome, we cannot say that it is clearly excessive. The plaintiff in this case submitted evidence that the stress of losing his job demoralized him, strained his relationships with his wife and children, and negatively affected his sleeping habits and appetite.

### D. Liquidated Damages

The plaintiff claims that the plain language of § 216(b) requires that he be awarded an equal additional amount over and above his back pay and compensatory damages as liquidated damages. He thus asks the court to reverse the district court's order on liquidated damages and amend the judgment as a matter of law to award him $94,400 rather than $47,200. The defendants, on the other hand, argue that, at most, the plaintiff would be entitled to liquidated damages only on the back pay award, since the doubling of any award for mental and emotional injuries would be punitive and contrary to the purpose of the FLSA.

We conclude that this issue is not properly before this court. Moore's notice of appeal indicates that Moore is appealing from the order of the district court entered on November 9, 2001. The sole issue considered in that order was the amount of attorney's fees Moore was to be awarded. The issue of whether Moore was entitled to liquidated damages was decided in a previous order, dated September 25, 2001. Although the defendants appealed from that order, Moore did not and, under well-settled precedent, he is barred from now raising this issue:

A party who does not appeal from a final decree of the trial court . . . may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he

seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. But it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.

*United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924); *see also El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479-80 (1999) (citing to *Am. Ry. Express* and discussing whether cross-appeal requirement is jurisdictional). As we have previously put it, an appellee may raise issues as a "shield" but not as a "sword." *Dole v. Briggs Constr. Co., Inc.*, 942 F.2d 318, 320 (6th Cir. 1991).

### E. Attorney's Fees

We review a district court's award of attorney's fees for abuse of discretion. *See Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). An abuse of discretion can be found when the lower court "relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard" or "when the reviewing court is firmly convinced that a mistake has been made." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 348-49 (6th Cir. 2000) (quoting *Phelan v Bell*, 8 F3d 369, 373 (6th Cir. 1993)). Attorney's fees must be set in amount that is "reasonable," 29 U.S.C. § 216(b), and in recent times the starting point has been a "lodestar" calculation – the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate. *See Adcock-Ladd*, 227 F.3d at 349. That amount may then be adjusted upwards or downwards, as the district court finds necessary under the circumstances of the particular case.

The Supreme Court has given guidance on the extent to which a fee should be adjusted when a plaintiff wins on some claims and loses on others. *See Hensley v. Eckerhart*, 461

U.S. 424 (1983). First, it is necessary to see whether the claims on which the plaintiff won and the claims on which the plaintiff lost are related. If they employ "a common core of facts or [are] based on related legal theories," *id*. at 435, the court should consider "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*. The Supreme Court noted that there was no "precise formula" for determining a reasonable fee, *id*. at 436-37, and stressed the district court's discretion in this area, *id*. at 437, but it specifically rejected a "mathematical approach" that compared the number of issues on which the plaintiff prevailed to the total number of issues in the case, finding that such an approach was not helpful in setting a reasonable fee. *Id*. at 435 n.11. The Court noted that litigants often raise alternative grounds and that rejection of some of those grounds should not lead to a reduced fee if the plaintiff has been successful. *Id*. at 435. The Sixth Circuit has followed suit in finding that attorney's fees should not be reduced by the ratio of successful claims to claims overall. *See Phelan*, 8 F.3d at 374 (6th Cir. 1994).

Under the *Hensley* analysis, the attorney seeking compensation retains the burden of documenting the number of hours spent on the case and of maintaining records in a way that would allow a court to determine how much time was spent on each claim. *See Hensley*, 461 U.S. at 437. At the same time, the district court is required to give a clear explanation of the fee award. *See id*; *see also Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990) ("A district court should state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why.").

In this case, the district court did not believe the plaintiff had adequately separated work conducted on successful claims from work conducted on unsuccessful claims. However, the district court did not provide a clear explanation of the hours it excluded because the plaintiff did not specify the claims to which they related. Instead, it simply reduced

the amount of attorney's fees Moore requested by five-sixths, without considering the extent to which the claims were interrelated or discussing how successful Moore was in the context of the case overall.  In doing so, the district court abused its discretion.

### III.  *CONCLUSION*

For the reasons set out above, we AFFIRM the district court's judgment awarding plaintiff back pay and damages for mental and emotional distress, but VACATE the district court's award of attorney's fees and REMAND the case for a redetermination on this issue.