**Leona ROBINSON, Plaintiff,**

v.

**WAL–MART STORES, INC., and James D. Olson, Defendants.**

**No. 1:03–CV–265.**

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 6, 2004.

---

Rhett Pinsky, Pinsky, Smith, Fayette & Hulswit, Grand Rapids, MI, Mindy L. Kallus, Karmel & Gilden, Chicago, IL, for plaintiff.

Eric J. Pelton, Kienbaum Opperwall Hardy & Pelton, PLC, Birmingham., MI, for defendants.

## MEMORANDUM OPINION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McKEAGUE, District Judge.

Plaintiff Leona Robinson is a former employee of defendant Wal–Mart Stores, Inc. She was discharged on July 11, 2002. In this action, she alleges she was wrongfully terminated in retaliation for complaining about certain improprieties in the reporting of employees' work hours. She alleges her termination was in violation of the anti-retaliation provision of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and in violation of Michigan public policy. Named as defendant, in addition to Wal–Mart Stores, is James D.

Olson, general manager of the Wal–Mart Sam's Club store in Kentwood Michigan, where plaintiff was employed.

Defendants have moved for summary judgment on both of plaintiff's claims. The Court conducted a hearing on June 7, 2004, and took the motion under advisement. For the reasons that follow, the Court concludes the motion must be granted.

## I

Plaintiff commenced employment at the Wal–Mart Sam's Club store in Kentwood on August 18, 1997. On November 11, 1997, she became the Personnel Training Coordinator ("PTC"). In this position, plaintiff was primarily responsible for human resources and personnel functions, including payroll reports. During her tenure as PTC, plaintiff became aware that hours worked were occasionally under-reported by management and/or employees in order to meet the payroll budget. For example, some employees occasionally worked "off-the-clock" (i.e., worked more hours than claimed) without compensation, and some, to avoid claiming overtime compensation, falsely reported excessive hours worked one week as having been worked the following week as regular hours. These practices were motivated by Sam's Club's emphasis on minimizing payroll expenses, and in plaintiff's opinion, were either knowingly tolerated or tacitly encouraged by management. Plaintiff expressed concerns about these practices to her immediate supervisor, Ron Gerwin, and to defendant Olson. She was disappointed to find that little or no corrective action was taken. With time, her disappointment became frustration.

In February 2002, plaintiff had a conversation with Gerwin about class-action litigation then pending in the Saginaw County Circuit Court. The action involved claims challenging wage and work hour reporting practices at Wal–Mart and Sam's Club stores in Michigan. One of the named individual plaintiffs was Pamela Mackerway, a former employee of the Sam's Club store in Kentwood. In her conversation with Gerwin, plaintiff advised that she would not be comfortable testifying on Wal–Mart's behalf in the Mackerway litigation. Plaintiff had not been asked to testify in the case, but, as PTC, she was accustomed to testifying in workers' compensation and unemployment compensation hearings. She wanted her supervisor to know that if she were asked to testify in the Mackerway case, she "wasn't sure [she] could support Wal–Mart." Robinson dep. p. 182. Thereafter, plaintiff was advised, Gerwin would be accompanying her to hearings.

Before the question of plaintiff's testifying went further, however, she was first demoted, then discharged. It is undisputed that plaintiff had consistently received excellent performance evaluations throughout her employment at Sam's Club. In May 2002, she came under suspicion and was subject to investigation for improperly claiming additional hours worked. That is, instead of punching in and punching out correctly or submitting appropriate written time adjustment slips as needed, in accordance with approved procedures, plaintiff was found to have been calling in her own time adjustments. Plaintiff admitted having called in time adjustments, but claimed she had only done so with Ron Gerwin's approval. While the investigation was still pending, Gerwin died unexpectedly on June 15, 2002. The investigation was dropped and no disciplinary action was taken against plaintiff.

On June 22, 2002, plaintiff requested and received a cash advance from the payroll clerk. She said the advance had been authorized by co-manager Steve Saloma.

When Olson learned that Saloma had no recollection of having approved the cash advance, he reported these facts to the regional personnel manager, who decided that plaintiff would be demoted from her PTC position.

Plaintiff accepted a cashier position, commencing in early July. Within days she was terminated. On both July 9 and 10, plaintiff was observed talking with co-workers after being released by her supervisor, but before punching out—once for 20 minutes and once for 50 minutes. Plaintiff was terminated on July 11, 2002 for "wasting company time." Olson dep. pp. 82–83. This lawsuit followed.

## II

Defendants have moved for summary judgment on both of plaintiff's claims. The motion requires the Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a trial. *See generally Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact concerns "material" facts only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of plaintiff's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III

Section 215(a)(3) of the FLSA prohibits an employer from discriminating against an employee in retaliation for asserting rights protected under the FLSA. Specifically:

[I]t shall be unlawful for any person -

.      .      .      .      .

(3) to discharge or in any manner discriminate against an employee because such employee has filed any complaint or instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . . .

29 U.S.C. § 215(a)(3). Plaintiff alleges in count I of her complaint that she was discharged because she complained about her employer's violation of the FLSA.

■ To make out a *prima facie* case of retaliation, plaintiff must show (1) that she engaged in statutorily protected activity; (2) that she was subjected to adverse employment action; and (3) that there was a causal link between the protected activity and the adverse action. *Claudio–Gotay v. Becton Dickinson Caribe, Ltd.,* 375 F.3d 99 (1st Cir.2004); *Scott v. Sunrise Healthcare Corp.,* 195 F.3d 938, 940 (7th Cir. 1999). In moving for summary judgment, defendants maintain there is no evidence that plaintiff engaged in "protected activity."

Plaintiff acknowledges that she did not "file a complaint" or "institute a proceeding" under or related to the FLSA. She also acknowledges that she has not testified in any such proceeding and does not know whether she was about to before she was terminated. Nonetheless, she urges the Court to recognize and enforce the remedial purposes of the FLSA by construing the § 215(a)(3) retaliation provision broadly.

■ Indeed, the Sixth Circuit has held that the FLSA anti-retaliation protection can be triggered by the unofficial or informal assertion of statutory rights. *EEOC v. Romeo Community Schools,* 976 F.2d 985, 989 (6th Cir.1992). That is, an informal complaint by an employee is sufficient;

a formal filing is not necessary. *Id.;* *Moore v. Freeman,* 355 F.3d 558, 562 (6th Cir.2004).

■ Yet, plaintiff's expressions of concern or discomfort or frustration over her employer's wage and work hour reporting practices—even accepting her deposition testimony as true—do not amount to the requisite adversarial assertion of statutory rights. Plaintiff's expressions of concern, even if characterized as "complaints," were made in her capacity as Personnel Training Coordinator. She appears to have been appropriately cautioning her superiors about improprieties with an eye toward correcting them and minimizing the risk of liability. Even her expressed apprehensions about the possibility of testifying were a matter of frank and honest disclosure, for her employer's benefit as well as her own.[1]

Defendants correctly argue that plaintiff's claim is indistinguishable from the FLSA retaliation claim rejected by the Tenth Circuit in *McKenzie v. Renberg's Inc.,* 94 F.3d 1478 (10th Cir.1996):

> Here, McKenzie never crossed the line from being an employee merely performing her job as personnel director to an employee lodging a personal complaint about the wage and hour practices of her employer and *asserting* a right adverse to the company. McKenzie did not initiate a FLSA claim against the company on her own behalf or on behalf of anyone else. Rather, in her capacity as personnel manager, she informed the company that it was at risk of claims that might be instituted

by others as a result of its alleged FLSA violations. In order to engage in protected activity under § 215(a)(3), the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA. Here, McKenzie did none of these things. Indeed, McKenzie testified that her job responsibilities included participating in wage and hour issues. There is no evidence in the record to suggest that McKenzie was asserting any rights under the FLSA or that she took any action adverse to the company; rather, the record reflects that McKenzie's actions in connection with the overtime pay issue were completely consistent with her duties as personnel director for the company to evaluate wage and hour issues and to assist the company in complying with its obligations under the FLSA. McKenzie therefore lacks an essential ingredient of a retaliation claim; that is, she did not take a position adverse to her employer or assert any rights under the FLSA. Accordingly, McKenzie did not engage in activity protected under § 215(a)(3) . . . .

*Id.* at 1486–87 (emphasis in original; footnote omitted). The facts presented in *McKenzie* are materially indistinguishable from the instant facts. There is no reason

---

1. To the extent plaintiff characterizes her expressed apprehensions about testifying in the *Mackerway* case as a refusal to testify—a characterization not supported by her deposition testimony—her retaliation claim is nonetheless defective for another reason. As defendants have pointed out, the complaint in the *Mackerway* case, being *Brenda F. Scott, et al.*

*v. Wal–Mart Stores, Inc., et al.,* Saginaw County Circuit Court No. 01–40751–NZ–5, did not seek enforcement of FLSA rights, but asserted exclusively breach of contract and unjust enrichment claims. Hence, plaintiff's "refusal to testify" was not in relation to a proceeding under or related to the FLSA.

the same result should not obtain in the Sixth Circuit.

Indeed, the First Circuit recently adopted the same approach, agreeing that "it is the assertion of statutory rights . . . . by taking some action adverse to the company . . . . that is the hallmark of protected activity under § 215(a)(3)." *Claudio–Gotay*, 375 F.3d 99, 102, quoting *McKenzie*, 94 F.3d at 1486. The *Claudio–Gotay* court went on to reject the claim of an employee who, in furtherance of his job responsibilities, informed his employer of potential overtime violations in an attempt to protect the employer.

The Court finds the analysis employed in these authorities reasonable and persuasive. Applying the same approach, the Court thus concludes that plaintiff, having taken no action adverse to her employer, did not engage in "protected activity." On this point there is no genuine issue of material fact. Plaintiff is unable to satisfy this essential element of her FLSA retaliation claim, and defendants are therefore entitled to summary judgment on count I of her complaint.

### IV

■ In count II, plaintiff alleges she was wrongfully discharged in violation of Michigan public policy. Generally, under Michigan law, an at-will employee may be discharged at any time for any, or no, reason. However, an exception to the rule has been recognized, based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable. *Suchodolski v. Michigan Consolidated Gas Co.*, 412 Mich. 692, 695, 316 N.W.2d 710 (1982). "Most often these proscriptions are found in explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty." *Id.* (footnote omitted). In addition, plaintiff contends, "a cause of action has been found to

be implied where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." *Id.* She insists that her complaints to management about wage and work hour reporting improprieties and expressed concerns about the possibility of testifying are tantamount to a refusal to violate the law.

■ Again, plaintiff's allegations and established facts fall short. The law which plaintiff contends she refused to violate is the FLSA. Yet, the FLSA expressly and specifically proscribes taking adverse employment action against an employee for asserting rights protected under the FLSA. Further, the FLSA provides a remedy for such a violation, which plaintiff has unsuccessfully pursued in count I of her complaint. Under Michigan law, such an express statutory prohibition and remedy are exclusive and preclude a common law public policy claim. *Dudewicz v. Norris–Schmid, Inc.*, 443 Mich. 68, 78–80, 503 N.W.2d 645 (1993)("A public policy claim is sustainable, then, only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue."). Hence, under the instant facts, plaintiff cannot sustain her public policy claim. Conversely, if plaintiff were able to establish that she did in fact refuse to violate the FLSA, she would be able to demonstrate the adverse assertion of FLSA rights that would make out a valid retaliation claim directly under the FLSA, which remedy is exclusive.

Plaintiff's count II public policy claim is thus not viable. There is no genuine issue of material fact and defendants are entitled to summary judgment on this claim as well.

A judgment order consistent with this opinion shall issue forthwith.

## JUDGMENT ORDER

In accordance with the Court's memorandum opinion of even date,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED**; and

**IT IS FURTHER ORDERED** that **JUDGMENT** is hereby **AWARDED** to defendants Wal–Mart Stores, Inc., and James D. Olson on both of plaintiff's claims against them.