| | |
|---|---|
| DAVID A. BENTKOWSKI | Case No. 2014-00651 |
| Plaintiff | Judge Patrick M. McGrath |
| v. | <u>DECISION</u> |
| OHIO LOTTERY COMMISSION | |
| Defendant | |

{¶1} This cause came to be heard on a complaint brought by plaintiff, David Bentkowski, for his remaining claim of retaliation against defendant, Ohio Lottery Commission (OLC).[1] The case proceeded to trial on the issues of liability and damages on January 25-26, 2016, and post-trial briefs were simultaneously filed on March 21, 2016. The parties filed reply briefs on March 28, 2016.[2]

{¶2} This matter arises from plaintiff's termination from OLC. Prior to his position at OLC, plaintiff served as mayor of Seven Hills, in Cuyahoga County, Ohio. In order to take his position at OLC, plaintiff resigned from his role as mayor. He began his employment with OLC on October 10, 2011 as an unclassified, at-will, and exempt employee serving in the role of labor relations officer. As labor relations officer, he served as the liaison between management and the union, and was responsible for facilitating labor relations, holding disciplinary hearings, and representing management in various labor matters. On November 13, 2012, plaintiff was terminated. Plaintiff alleges that his termination was retaliation for opposing his supervisor, Elizabeth

---

[1]Prior to trial, the court disposed of plaintiff's additional claim of wrongful termination in violation of public policy, which was based on the publication of several negative newspaper articles about him in the Cleveland *Plain Dealer*.

[2]A motion to quash the subpoena issued to non-party Ohio Public Employees Retirement System (OPERS) filed on January 26, 2016 remains pending. As discussed on the record, the parties, with the consent of the court, agreed to work together to obtain the relevant information from OPERS. Accordingly, the motion is DENIED as moot.

Popadiuk's (Popadiuk), allegedly discriminatory practices.  Specifically, plaintiff points to discriminatory actions against Bill Newsome (Newsome), Lora Watts (Watts), Notre LaBeach (LaBeach), Sam Erby (Erby), Loretta Washington (Washington), Jim Zimmerman (Zimmerman), and Giavonna Evans (Evans).[3]

{¶3} R.C. 4112.02(I) provides that it is an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."  Plaintiff may prove a retaliation claim through either direct or circumstantial evidence that unlawful retaliation motivated defendant's adverse employment decision. *Reid v. Plainsboro Partners, III,* 10th Dist. Franklin No. 09AP-442, 2010-Ohio-4373, ¶ 55.

{¶4} "To establish a prima facie case of retaliation under R.C. 4112.02(I), plaintiff ha[s] to establish the following: (1) [he] engaged in protected activity; (2) [defendant] knew of her participation in protected activity; (3) [defendant] engaged in retaliatory conduct; and (4) a causal link exists between the protected activity and the adverse action." *Nebozuk v. Abercrombie* & *Fitch* Co., 10th Dist. Franklin No. 13AP-591, 2014-Ohio-1600, ¶ 40.  "The establishment of a prima facie case creates a presumption that the employer unlawfully retaliated against the plaintiff." *Id.*

{¶5} If plaintiff establishes a prima facie case, the burden of production shifts to defendant to "articulate some legitimate, nondiscriminatory reason for [its action]." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If defendant succeeds in doing so, then the burden shifts back to plaintiff to demonstrate that defendant's proffered reason was not the true reason for the employment decision.  *Id.*

---

[3]Although plaintiff attempts to include actions involving Evans as evidence of discrimination, the court disallowed any testimony regarding Evans to be admitted in the case because the events occurred after plaintiff's termination from OLC.

{¶6} At the trial, plaintiff testified that he would tell Popadiuk that he thought her actions were discriminatory and inappropriate. According to plaintiff, Popadiuk described Newsome to him as a "big, scary black guy." Plaintiff testified that he subsequently hinted to Popadiuk that he had a lot of African-American friends hoping that she would understand that she could not be racist in front of him. However, plaintiff also concedes in his affidavit, which was admitted into evidence as Defendant's Exhibit A, that Newsome and Popadiuk were friends.[4]

{¶7} Plaintiff further testified that Popadiuk stated that she wanted to fire Watts "because she always looks wacked out on drugs" and that she was "ghetto" and "hood." Plaintiff was in charge of the disciplinary proceeding against Watts, an African-American woman who had made over 300 personal phone calls in one month while at work, but stated that Popadiuk was trying to bring multiple charges against Watts for what he considered was really a single offense. Plaintiff testified that he responded by warning Popadiuk that she should not "go there" and that she "can't say stuff like that." Watts eventually resigned from her position in 2014, after plaintiff had already been terminated, and after it was discovered that she had nude photos of her supervisor, Erby, on her phone, which were taken at work.

{¶8} With regard to Erby and Washington, who were Watts' supervisors and also African-American, plaintiff testified that Popadiuk told him that they were "stupid managers" and that she wanted to go after them. Plaintiff also testified that Popadiuk would bring up race in discussions about Erby and Washington to which plaintiff told her that she was going to be sued. Erby resigned in 2014 following the incident involving Watts, and Washington resigned at the end of 2014. Both resignations occurred after plaintiff had been discharged from OLC.

{¶9} Plaintiff also testified that Popadiuk discriminated against LaBeach by saying that she was "worthless" and "too old and was black," and wanting to get rid of

---

[4]The court notes that Newsome had left OLC ten months prior to plaintiff's hiring.

her.  Plaintiff also testified that Popadiuk was trying to build a case against her and that LaBeach began receiving poor performance reviews and write ups for what plaintiff described as arbitrary.  According to plaintiff, LaBeach was most notably disciplined for colliding with an Amish buggy with her motor vehicle and destroying the buggy and injuring the horse.  Plaintiff testified that he was in charge of LaBeach's discipline, which resulted in a verbal reprimand.  In addition to the verbal reprimand from the buggy incident, LaBeach also had multiple issuances of discipline due to violations of work rules and multiple traffic accidents.  (Plaintiff's Exh. 23).  Eventually, LaBeach retired from OLC.

{¶10} Lastly, plaintiff testified that Popadiuk hated Zimmerman, a white male, and discriminated against him because of his diabetes, a condition that plaintiff states is considered a disability under R.C. 4112 although Zimmerman himself had never raised a disability claim.  In April 2012, there was an incident during which Zimmerman became visibly angry and agitated during a goals and objective meeting involving plaintiff.  Plaintiff testified that after the incident, Popadiuk indicated that she was going use the incident to discipline Zimmerman.  Plaintiff also stated that Popadiuk scoffed at the idea that Zimmerman's diabetes was affecting his work performance and that when he mentioned that OLC had to make reasonable accommodations for Zimmerman's disability, Popadiuk became irritated.

{¶11} Popadiuk's testimony starkly contrasted plaintiff's testimony.  According to Popadiuk, she never made any of the discriminatory remarks alleged by plaintiff nor did she paper employees' files to try to get them fired.  She also testified that plaintiff never conveyed to her that he thought anything she said was racist or discriminatory.  Furthermore, she testified that as a natural part of the human resources process for making disciplinary decisions, race would be discussed, but not for the purpose of taking discriminatory action.  With regard to her relationship with plaintiff, Popadiuk testified that plaintiff was exhausting and difficult to deal with.  She testified that plaintiff

would oppose and argue with her, often stating that he was a lawyer and that she should listen to him for that reason.

{¶12} Based upon the testimony, the court finds that plaintiff did not establish that his actions were protected activity.  "In order to engage in protected activity * * * the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer * * *."  *Evans v. D.E. Foxx & Assocs.*, S.D.Ohio No. 11-261-HJW-JGW, 2013 WL 3867598 (July 25, 2013), citing *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486-87 (10th Cir.1996).  Furthermore, a "plaintiff's expressions of concern or discomfort or frustration over her employer's * * * practices * * * do not amount to the requisite adversarial assertion of statutory rights." *Id.*, citing *Robinson v. Wal-Mart Stores, Inc.*, 341 F.Supp.2d 759, 763 (W.D.Mich. 2004). In his role as labor relations officer of OLC, plaintiff was an integral part of employee discipline.  As a liaison between management and the union, a natural responsibility of plaintiff would be to analyze both sides of an issue and play "devil's advocate" as plaintiff himself testified.  Plaintiff's statements mentioning his African-American friends, "let's not go there," "you can't say stuff like that," redirecting discussions, suggesting reduced sanctions, and stating that Popadiuk could not act a certain way because she could get sued do not constitute protected activity as required for a retaliation claim.

{¶13} The court also finds that even if the court construes plaintiff's actions as protected activity, plaintiff failed to establish that his alleged opposition was the but-for cause of his termination.   "[T]o prevail on a retaliation claim, a plaintiff must show that retaliation is a determinative factor—not just a motivating factor—in the employer's decision to take adverse employment action.  Thus, the causation standard imposed in retaliation cases (but-for) causation is a higher standard * * *." *Smith v. Ohio Dept. of Pub. Safety*, 2013-Ohio-4210, ¶ 59, 997 N.E.2d 597 (10th Dist.).  Plaintiff himself stated in his complaint and affidavit that the reason for his termination was for the bad media coverage regarding his reporting of crimes committed against him.  At trial, emails were

introduced into evidence in which plaintiff warns against retaliation for his reporting of crimes while he was mayor of Seven Hills.

{¶14} Moreover, the primary conversations that plaintiff described in his testimony during which he opposed Popadiuk's alleged discriminatory behavior occurred in January (Labeach), March (Watts, Erby, and Washington), and April (Zimmerman) 2012. Plaintiff was terminated approximately seven months later. "[W]here some time elapses between the employer's discovery of a protected activity and the subsequent adverse employment action, the employee must produce other evidence of retaliatory conduct to establish causality." *Aycox v. Columbus Bd. of Educ.*, 10th Dist. Franklin No. 03AP-1285, 2005-Ohio-69, ¶ 21, citing *Kipp v. Mo. Highway & Transp. Comm'n.*, 280 F.3d 893, 897 (8th Cir.2002) (holding that an "interval of two months between complaint and adverse action 'so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [plaintiff's] favor on the matter of causal link.'" (Internal citations omitted.) In this case, plaintiff's termination occurred seven months after the last discussion involving plaintiff's alleged protected activity. Because of this significant period of time and because plaintiff has shown no other evidence of retaliatory conduct except for his prior allegations that the negative media coverage was the cause of his termination, plaintiff's retaliation claim fails. He has not shown by the preponderance of the evidence that his actions constituted protected activity or that his actions opposing Popadiuk's alleged discriminatory conduct were the but-for cause of his termination.

{¶15} Assuming, however, that plaintiff met his burden of establishing a prima facie case of retaliation, the court still concludes that defendant has stated a legitimate, non-discriminatory reason for plaintiff's termination. Popadiuk testified that plaintiff was not a good fit. She explained that plaintiff continually argued and debated with her and was difficult to communicate with. Popadiuk also testified that even though plaintiff was not in a legal position, he would mention that he was a lawyer and that she should listen

to him.  She also stated that he would argue with her when she made changes to his documents, stating that he was a lawyer.  In order to show that this reason was merely pretext for his termination, plaintiff testified that Popadiuk never gave him negative feedback and that the only times he had any issues with her were when he would approach her about her allegedly discriminatory conduct.  The court finds that Popadiuk's testimony is more reliable and representative of the actual events that occurred between them, and also finds that plaintiff has not proved beyond a preponderance of the evidence that Popadiuk's reasons for terminating plaintiff was merely pretext.  Therefore, plaintiff's claim fails on this ground as well.

{¶16} Based on the foregoing, the court concludes that plaintiff has failed to prove his claim of retaliation by a preponderance of the evidence.  The court finds that plaintiff was terminated for reasons other than retaliation for opposing Popadiuk's alleged discriminatory conduct.  Accordingly, judgment shall be rendered in favor of defendant.

_____
PATRICK M. MCGRATH
Judge

[Cite as *Bentkowski v. Ohio Lottery Comm.*, 2016-Ohio-5222.]

| | |
|---|---|
| DAVID A. BENTKOWSKI | Case No. 2014-00651 |
| Plaintiff | Judge Patrick M. McGrath |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO LOTTERY COMMISSION | |
| Defendant | |

{¶17} This case was tried to the court on the issues of liability and damages. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Brent L. English
The 820 Building
820 West Superior Avenue, 9th Floor
Cleveland, Ohio 44113-1818

Randall W. Knutti
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed June 22, 2016**
**Sent to S.C. Reporter 8/3/16**